# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Guardianship of:<br><br>B.R. and I.R.,<br><br>      Minors. | No. 59581-8-II<br><br><br>UNPUBLISHED OPINION |

VELJACIC, A.C.J. — Yasmein Rogers appeals the trial court's denial of her petition to terminate or change a nonparent guardianship order involving her two children, BR and IR. The children are currently placed with their paternal aunt and uncle, Michael and Meca Doll. Because the trial court did not abuse its discretion in denying Rogers's petition, we affirm.

## FACTS

In 2016, the trial court entered a custody order placing two-year-old twins, BR and IR, with the Dolls.[1] The court determined that Rogers was unfit to parent due to Rogers's living conditions being unsuitable for children and an active Child Protective Services (CPS) case involving her

---

[1] This action was originally brought under chapter 26.10 RCW. This chapter, regarding nonparent custody actions, was repealed on January 1, 2021. *See* LAWS OF 2020, ch. 312, § 905. At the time Rogers filed her petition to terminate or change the custodial relationship, chapter 11.130 RCW, the "Uniform Guardianship, Conservatorship, and Other Protective Arrangements Act," (UGA) controlled the relationship. *See* LAWS OF 2019, ch. 437; LAWS OF 2020, ch. 312. Correspondingly, the legal term "custody" has been replaced with the term "guardianship."

older daughter from a prior relationship, LC.[2] BR and IR's father consented to the nonparental custody placement. Both parents were granted visitation.

For over six years, Rogers had limited contact with BR and IR.

In December 2022, Rogers filed a petition to terminate or change the guardianship order. She alleged that she was now financially able to support the children and provide a stable environment. Rogers further asserted that LC had been returned to her care and that this warranted BR and IR also being returned to her care.

The trial court appointed an attorney to represent the twins. Counsel for the twins filed a report, stating that the children felt abandoned by their mother and were "adamant" that they were not interested in any contact with her. Clerk's Papers (CP) at 105. Counsel expressed concern about Rogers's mental health. She opined that Rogers did not "seem to be in a state of mind to have contact with her daughters without seriously upsetting them." CP at 106.

The trial court appointed a guardian ad litem (GAL). The GAL believed that BR and IR would like to see Rogers but the GAL had concerns and recommended supervised visitation.

Meca[3] filed a declaration that Rogers was "a stranger to the girls" and there were concerns Rogers would reenter the girls' lives and then leave again. CP at 124. Meca also expressed concerns about Rogers's mental health, pointing to several threats she had made to the Dolls and several social media posts that Rogers had made online, alleging that the Dolls had kidnapped BR and IR from her.

---

[2] Although she had no familial relationship to BR and IR's grandparents, LC was placed with them during the dependency proceedings.

[3] Because Michael and Meca Doll share the same last name, Meca's first name is used for clarity. No disrespect is intended.

BR and IR's father also filed a declaration. He expressed his preference for the Dolls to continue to have guardianship of BR and IR. He declared that he has visitation with the girls and they are "happy, healthy, loved, and cherished." CP at 75

BR and IR's paternal grandmother, Pamela Pratt, detailed concerns she had regarding Rogers's parenting in her declaration. She recommended that the girls remain with the Dolls.

The trial court held a hearing in August 2023. The court considered the above declarations and heard arguments from the parties' and the children's attorneys. The court found that Rogers failed to show termination of the guardianship or change of the 2016 order was warranted. In its order, the court explained that it applied "the provisions of RCW 11.130.240" and found that there was not sufficient evidence of a change in circumstances to justify termination of the guardianship. CP at 140. The court also found that allowing the children to have contact with Rogers would be harmful to them. The court further found that the children's interest in continuing the guardianship outweighed Rogers's interest in restoring contact with BR and IR. The court ultimately denied Rogers's petition to terminate or change the guardianship.

Rogers appeals.

## ANALYSIS

Rogers contends that the trial court erred in denying her petition to terminate or change the guardianship order. We disagree.

3

I.  APPLICABLE STATUTE

As an initial matter, Rogers relies on RCW 13.36.070 to assert that there has been a change in circumstances to warrant termination or modification of the 2016 order.  The Dolls respond that the relevant statute is RCW 11.130.240.[4]  The Dolls are correct.

RCW 13.36.070 governs the termination of guardianships established through dependency proceedings, which involve Washington's Department of Children, Youth, and Families.  RCW 11.130.240, by contrast, governs the termination of guardianships that do not arise from dependency actions.  Because the guardianship in this case did not arise directly from a dependency proceeding, RCW 11.130.240 is the applicable statute.

II.  STANDARD OF REVIEW

We review a trial court's decision regarding the termination of a guardianship under chapter 11.130 RCW for an abuse of discretion.  *In re Guardianship of F.S.*, 33 Wn. App. 2d 24, 35, 559 P.3d 138 (2024), *review denied*, 4 Wn.3d 1015 (2025).  Under this standard, we will find error only if the "'court's decision (1) adopts a view that no reasonable person would take and is thus manifestly unreasonable, (2) rests on facts unsupported in the record and is thus based on untenable grounds, or (3) was reached by applying the wrong legal standard and is thus made for untenable reasons.'"  *Id*. at 35 (quoting *In re Guardianship of L.C.*, 28 Wn. App. 2d 766, 772, 538 P.3d 309 (2023)).  We review factual findings for substantial evidence.  *In re Marriage of Katare*, 175 Wn.2d 23, 35, 283 P.3d 546 (2012).

---

[4] We note that Rogers correctly referenced this chapter in the footer of her petition to terminate or change guardianship.

III.     LEGAL PRINCIPLES

Under RCW 11.130.240(1)(a) and (b), trial courts may terminate a guardianship based on the minor's death, adoption, emancipation, or reaching the age of majority; or when the court finds that the basis for appointment of a guardian no longer exists. If the court determines that the basis for the guardianship no longer exists, the court must then weigh whether termination of the guardianship "would be harmful to the minor" and whether the minor's "interest in the continuation of the guardianship outweighs the interest of any parent of the minor in restoration of the parent's right to make decisions for the minor." RCW 11.130.240(1)(b)(i) and (ii).

A parent seeking termination or modification of a guardianship must file a petition and then the court will conduct a hearing on the petition. RCW 11.130.240(2), (3). There is no requirement for an adequate cause finding before proceeding to a hearing on the petition to terminate or modify a guardianship under RCW 11.130.240.

IV.     NO ABUSE OF DISCRETION

Rogers contends that her circumstances have changed, requiring termination or modification of the guardianship. Rogers does not address the other statutory factors of whether terminating the guardianship would harm BR and IR, and whether their interest in continuing the guardianship outweighs Rogers's interest. RCW 11.130.240(1)(b)(i) and (ii).

Rogers filed a petition to terminate or change the guardianship order after having very limited contact with BR and IR for several years. She alleged that she can now financially provide for the children and provide a stable environment as evidenced by LC's return to her care. Even assuming this was sufficient to show her circumstances have changed to satisfy RCW 11.130.240(1)(b), the trial court was required to next review the impact on the children.

BR and IR's attorney, their GAL, their father, their grandmother, and Meca all expressed reservations about terminating the guardianship. Specifically, the girls felt abandoned by their mother and were "adamant" they did not want a relationship with her. CP at 105. BR and IR's attorney opined that Rogers did not "seem to be in a state of mind to have contact with her daughters without seriously upsetting them." CP at 106. There were concerns Rogers would leave again. There were also concerns about Rogers's mental health and use of social media to target the Dolls. BR and IR's father and grandmother unequivocally supported maintaining the Dolls' guardianship of the girls.

In denying the petition to terminate or modify the guardianship, the trial court found that it would be harmful to the children to return them to Rogers's care. The court also found that the children's interest in continuing the guardianship outweighed Rogers's interest in restoring contact with BR and IR.

We hold that the trial court's findings are supported by substantial facts in the record. Termination or modification of the guardianship was not warranted under RCW 11.130.240(1)(b)(i) and (ii). Accordingly, tenable grounds exist for the court to deny Rogers's petition to terminate or change the guardianship.

## CONCLUSION

We hold that the trial court did not abuse its discretion in denying Rogers's petition to terminate or change the Dolls' guardianship of BR and IR. Therefore, we affirm the court's order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, A.C.J.

We concur:

_____
Lee, J.

_____
Glasgow, J.